

FILED

Jun 28 2018, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew J. Borland
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dorfman Property Management, *Appellant-Defendant,* | June 28, 2018 |
| | Court of Appeals Case No. 06A01-1711-SC-2623 |
| v. | Appeal from the Boone Superior Court |
| Tameka Edwards, *Appellee-Plaintiff.* | The Honorable Bruce E. Petit, Judge |
| | Trial Court Cause No. 06D02-1704-SC-281 |

**Bailey, Judge.**

# Case Summary

Dorfman Property Management ("Dorfman") appeals a small claims judgment ordering that Dorfman return to its former tenant, Tameka Edwards ("Edwards"), a portion of her security deposit. Dorfman presents the sole issue of whether the judgment is clearly erroneous because Edwards was charged for less than all costs incurred by Dorfman, specifically, those for professional housecleaning and repainting. We affirm.

# Facts and Procedural History

On February 26, 2016, Edwards and Dorfman executed a one-year lease for a house in Whitestown, Indiana ("the Lease"). The house was to be occupied by Edwards and her three children. Edwards agreed to pay monthly rent of $1,250.00 and she tendered a $2,500.00 security deposit to Dorfman. The Lease specified that the "amount necessary to have the carpet professionally cleaned" would be deducted from the security deposit, as would amounts "reasonably required" to reimburse Dorfman for cleaning and repair in "all rooms in which Tenant shall have damaged or irreparably marked the walls." (Def. Ex. B. Para. 9.)

Upon move-in, Edwards asked that certain exterior damages be repaired. With that matter unresolved, more serious habitability issues arose. A sewer backup occurred at the rental property and Dorfman attempted to charge Edwards for the maintenance response. Edwards obtained not-for-profit legal assistance;

after their intervention on Edwards's behalf, Dorfman ceased demanding payment from Edwards related to the sewer backup. Thereafter, the air conditioning in the home stopped functioning. Edwards again obtained legal assistance and the air conditioning unit was repaired.

[4] At the end of the Lease, Edwards gave notice of her intent to vacate the premises and provided a forwarding address in Georgia. Dorfman mailed Edwards a "Move Out/Deposit Report"[1] assessing the following amounts:

| | |
|---|---|
| Carpet Cleaning | $937.30 |
| Housecleaning | 225.00 |
| Painting/Wall Repair | 987.50 |
| Door Tracks | 74.00 |
| Mini-blinds | 45.00 |
| Broken screens | 70.00 |
| Dishwasher wheel | 45.00 |
| Driveway Oil Stain | 50.00 |
| Microwave Repair | 95.00 |
| Toilet Seats/Lightbulbs | 70.00 |
| Sewer Bill | 230.22 |

---

[1] The parties treated this report as an itemization compliant with Indiana Code Section 32-31-3-12. This statute provides in relevant part:

> Upon termination of a rental agreement, a landlord shall return to the tenant the security deposit minus any amount applied to:
>
> (1) the payment of accrued rent
>
> (2) the amount of damages that the landlord has suffered or will reasonably suffer by reason of the tenant's noncompliance with law or the rental agreement; and
>
> (3) unpaid utility or sewer charges that the tenant is obligated to pay under the rental agreement;
>
> all as itemized by the landlord with the amount due in a written notice that is delivered to the tenant not more than forty-five (45) days after termination of the rental agreement and delivery of possession.

(Def. Ex. C.) Because the aggregate amount of $2,829.02 exceeded the security deposit, Dorfman demanded payment from Edwards in the amount of $329.02.

[5] Edwards sued Dorfman in small claims court to recover her security deposit. On August 15, 2017, the trial court conducted a hearing at which Edwards and Dorfman's Office/Maintenance Manager, Kari McAtee ("McAtee"), testified. Edwards and McAtee each submitted photographs for the trial court's review. Edwards testified that she had cleaned the house and patched any nail holes. She claimed that she had personally taken the photographs she submitted into evidence. McAtee testified that she had never been inside the house rented by Edwards, but that a leasing agent or real estate agent had photographed the house. McAtee's testimony consisted of her description of what those photographs depicted. McAtee testified that the photographs depicted scuff marks, dirty walls and baseboards, hair and dirt, a black mark on a wall, a missing dishwasher wheel, and an unclean door.

[6] The trial court issued an order on October 18, 2017. The trial court's order stated that it had found the photographs tendered by Edwards "to be particularly persuasive" and that the property had been "well-maintained" by Edwards. (Appealed Order at 4.) The order also stated that "cleaning could have been a bit more thorough" but there was a lack of "actual damage" to the rental property beyond ordinary wear and tear for which a landlord would expect to be responsible as a "cost of doing business." *Id.* at 4-5. Dorfman was permitted to deduct from the deposit: professional carpet cleaning fee of

$937.30,[2] an unpaid sewer bill of $230.22, replacement cost for door tracks of $74.00, and replacement cost for mini-blinds of $45.00. Dorfman was ordered to refund $1,213.48 to Edwards.

[7] Dorfman now appeals, contending that explicit terms of the Lease entitled Dorfman to retain sums for professional cleaning and repainting of the entire house.

# Discussion and Decision

[8] We review a small claims court's judgment for clear error. *Bokori v. Martinoski*, 70 N.E.3d 441, 443 (Ind. Ct. App. 2017). A deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. *Lae v. Householder*, 789 N.E.2d 481, 483 (Ind. 2003). Here, Edwards did not file an appellee's brief, "and thus we may reverse upon a prima facie showing of reversible error – but even so, we still may not reweigh evidence or reassess witness credibility." *Bokori*, 70 N.E.3d at 444.

[9] Dorfman invites our de novo review of the Lease. The interpretation of a contract is a pure question of law. *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648,

---

[2] The Lease specifically provided for payment of this item, regardless of the move-out condition of the carpet. Edwards did not specifically challenge the reasonableness of the amount, $937.30, which the trial court characterized as "not an insignificant sum." Appealed Order at 5.

657 (Ind. Ct. App. 2013). When a contract is clear and unambiguous, the language will be given its plain meaning. *Id.*

[10] Dorfman directs our attention to certain language of Paragraph 9 of the Lease, applicable to cleaning and repainting:

> The following conditions must be met to qualify for a full-refund: h. The property has been thoroughly cleaned and delivered in the same move in condition upon vacating. …

> Landlord shall be entitled to deduct from the security deposit any amounts in addition to the carpet cleaning fee as shall be reasonably required to reimburse Landlord for a complete cleaning, repair, and repainting of any and all rooms in which Tenant shall have damaged or irreparably marked the walls, including holes created to hang pictures, etc. Such cleaning, repair and repainting shall not be deemed to be ordinary "wear and tear."

(Def. Ex. C.)

[11] Dorfman claims entitlement to the full costs of professional cleaning and painting, asserting, "an order was issued in contravention of the contract" when "the trial court added its own interpretation to the written agreement." Appellant's Brief at 11. According to Dorfman, the trial court misdirected its focus to whether "cleaning could have been a bit more thorough" as opposed to a requisite "thorough cleaning" and also focused on "actual damage" or "irreparable damage" rather than "[the fact] that expenses were incurred to repair [marks and patched spots on the walls]." Appellant's Brief at 10-11.

[12] Dorfman argues:

> Essentially, the lease requires the tenant to patch holes and return the walls to move in condition. The Trial Court may not have liked this condition, but it is a part of the valid contract between the parties and it is explicit. In this case, the tenant either had to refrain from marking or putting holes in the walls or she had to repair the holes and marks she made. She did neither. Under the language of the lease, she is liable for the cost to the landlord Dorfman to do so. The Trial Court's Order to the contrary should be reversed.

Appellant's Brief at 12.

[13] Distilled to its essence, Dorfman's argument is that: (1) the Lease requires a tenant to leave the premises in move-in condition; and (2) should Dorfman identify any scuffing, mark, dirt, or nail hole, the Lease requires the tenant to fully reimburse costs of professionally cleaning and repainting the entire room or rooms containing scuffing, a mark, dirt, or nail hole. In taking this position, Dorfman ignores the reasonableness requirements of the Lease and a landlord's obligations under Indiana Code Section 32-31-3-12. That said, the trial court was not tasked with resolving an ambiguity in the Lease but rather with applying the terms of the Lease in the face of conflicting evidence. Dorfman ignores the evidence favorable to the judgment.

[14] Edwards testified that she had left the leased house in a clean and undamaged condition. Her evidentiary photographs, taken by her personally, were those found by the trial court to be "particularly persuasive." (Appealed Order at 4.) As for the photographs taken by a real estate agent or leasing agent and

introduced into evidence by Dorfman, Edwards denied that they fairly depicted the condition of her rental house at her move-out. According to Edwards, they either showed a different rental property or conditions attributable to someone other than herself. Finally, the trial court questioned Edwards concerning an "allegation of nail holes poorly repaired" and Edwards responded she had left her nail holes patched and any inadequately repaired areas were "not hers." (Tr. Vol. II, pgs. 41-42.) The trial court, as the fact-finder, credited Edwards's testimony and documentary evidence. We will not reweigh the evidence or assess credibility of any witness. *Bokori*, 70 N.E.3d at 444.

# Conclusion

[15] Dorfman has not shown that the trial court clearly erred in ordering that Dorfman return to Edwards a portion of her security deposit.

[16] Affirmed.

Najam, J., and Brown, J., concur.